454 So.2d 707 (1984)
Kenneth Eric CARWISE, Appellant,
v.
STATE of Florida, Appellee.
No. AW-31.
District Court of Appeal of Florida, First District.
August 14, 1984.
Rehearing Denied September 6, 1984.
*708 Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant appeals judgments of conviction for aggravated battery, battery upon a law enforcement officer, and resisting arrest with violence. He raises two grounds for relief from this court. Finding both grounds to be unavailing, we affirm.
During jury selection at appellant's trial, the initial jury venire became depleted. As a result, the trial court ordered the summoning of additional jurors for creation of a supplemental venire from the master jury list, by telephone. At a post-trial hearing on this issue requested by appellant, a deputy clerk testified that in summoning the supplemental venire by telephone the clerk's office attempted to make contact with the potential jurors by telephoning them at their residences, unless the clerk's office personnel had personal knowledge of where these prospective jurors were employed. In that case, the jurors were called at work. According to the further testimony of an employee of the clerk's office, a number of the prospective jurors had no telephones. Therefore, Sheriff Leonard of the Suwannee County Sheriff's Department, as well as some of his deputies, received a list of potential jurors lacking home telephones from the clerk's office and attempted to contact these jurors at home. Sheriff Leonard testified that he individually visited five residences, and further that his deputies visited an undisclosed number of additional residences. The attempts by Sheriff Leonard and his deputies *709 to contact these prospective jurors at home apparently met with mixed success.
Appellant timely objected to the aforementioned methods of summoning prospective jurors to be impaneled for voir dire at his trial. He asserted that the procedures utilized were discriminatory on both economic and racial grounds in that persons suffering from socioeconomic deprivations were more likely to lack telephones at their residences than other persons not similarly situated. He contends, therefore, that the methods utilized below in summoning prospective jurors was not sufficiently random to assure him an opportunity to have a fair cross-section of the community sit in judgment of his guilt. Specifically, appellant asserts that as a result of the method of summoning jurors actually utilized, two discrete classes of potential jurors were systematically excluded from the jury venire; people too poor to afford telephones, and people who were at work when contact was attempted to be made with them.
On this issue, appellant relies chiefly on this court's decision in Bass v. State, 368 So.2d 447 (Fla. 1st DCA 1979). In Bass, the trial judge, resorting to Section 40.42, Florida Statutes (1977) (since repealed), ordered the sheriff of Escambia County to summon additional qualified jurors from the body of the county for completion of the jury panel. In response to the trial judge's order in Bass, Sergeant Morris of the Escambia County Sheriff's Department asked for volunteers for jury duty at an evening prayer meeting of his all Caucasian church. He received five volunteers, two of whom eventually served on Bass' jury. This court found that Sergeant Morris' actions precluded the possibility that black members of the Escambia County community would be among the special venire from which the jury was to be drawn and that this resulted in a systematic, unintended exclusion of blacks from Bass' jury venire in violation of his right to a jury representing a fair cross-section of the community in which he lived. In the case at bar, however, although appellant correctly states the law, he is entitled to no relief.
It is, of course, true that the right to a jury trial contemplates that the jury be drawn from a representative cross-section of the community without the systematic exclusion of large, distinct and identifiable segments of the community. Taylor v. Louisiana, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). However, every jury need not actually contain representatives of all the economic, social, religious, racial, political, and geographical groups within the community. Thiel v. Southern Pacific Company, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946). Rather, the constitutional requirement that a jury be comprised of a fair cross-section of the community is met when the selection process for summoning jurors for impaneling occurs randomly. State v. Silva, 259 So.2d 153, 163 (Fla. 1972). This randomness in selection or summoning is thought to assure a "fair possibility for obtaining a representative cross-section of the community." Jordan v. State, 293 So.2d 131, 134 (Fla. 2d DCA 1974) (citation omitted). This principle was recognized in Bass v. State, supra, where the court noted that Sergeant Morris' summoning of jurors from an all-Caucasian church "precluded the possibility that black members of the community would be among the special venire from which [defendant Bass'] jury was to be drawn." Bass v. State, supra at 449.
Here, appellant fails to show a lack of randomness in the juror summoning process, either in terms of the source of the jurors from whom the selections were to be made, or in the selection process itself. The source of potential supplemental jurors for appellant's trial was the master jury list. Appellant has not shown that this list of jurors was an improper source. Compare U.S. v. Goff, 509 F.2d 825 (5th Cir.1975), cert. den., 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83 (1975) (exclusive reliance on voter registration lists as a source of potential jurors upheld).
Appellant nevertheless maintains that the summoning methods used here defeat the otherwise random selection process. *710 The significance of this possibility lies in the fact that a non-random process of actual selection of jurors might result in the systematic exclusion of distinct and constitutionally identifiable segments of the population even though there were no such exclusions from the initial pool or venire.[1] Although appellant here asserts that such a distinctive and identifiable segment of the population was excluded, that is, blacks and working people, appellant offers no factual basis underlying his claim. Rojas v. State, 288 So.2d 234 (Fla. 1973), cert. den., 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974). In other words, appellant offered no evidence below showing a link between ownership of a telephone at one's residence and membership in the classes appellant asserts were excluded.
Furthermore, even if we assume that appellant has sufficiently identified a distinctive and identifiable segment of the community excluded from his trial by the selection process, that is, persons without telephones at their personal residences, and persons with telephones who were working, appellant's claim is still unavailing. Not every factually distinguishable group has been given constitutionally "identifiable" status in terms of achieving a representative cross-section of the community in the jury venire, and selection procedures effecting such non-recognized groups have been upheld even where the procedure utilized in fact excludes these groups. U.S. v. Ross, 468 F.2d 1213 (9th Cir.1972), U.S. ex rel Chestnut v. Criminal Court, 442 F.2d 611 (2d Cir.1971). Here, the asserted "identifiable" group  persons who either do not possess residential telephones, or if they do, are working people  has not been designated a constitutionally protected segment of the community. Cf. Hitchcock v. State, 413 So.2d 741, 745 (Fla. 1982), cert. den., 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982) (mothers with young children do not comprise a constitutionally significant class (footnote omitted)).
As we noted earlier, the actual summoning of jurors did not focus exclusively on jurors with telephones, working or not working, since the sheriff and his deputies also made not insubstantial efforts to summon jurors without telephones by personally seeking to contact them at their homes. Therefore, appellant has established neither a prima facie case of racial or economic discrimination, nor has he established that persons lacking in residential telephones and those with telephones who are working people are a constitutionally "identifiable" segment of the population whose representation on a jury venire is constitutionally mandated.
Appellant's second point, in which he challenges the sufficiency of the evidence to support his conviction for resisting arrest with violence, on the grounds that the arresting officer was not engaged "in the lawful execution of any legal duty" (Section 843.01, Florida Statutes (1983)) at the time of the alleged offense, is wholly without merit. There was ample testimony from which the jury could find that acts of battery committed upon Officer Darnell by appellant furnished independent grounds for appellant's arrest prior to any action or announcement by Officer Darnell indicating an intention to arrest appellant. Subsequently, after being informed that he was under arrest, appellant while in the process of fleeing the scene threw a brick or some *711 other hard object which struck the officer in the back, and did succeed in eluding capture until later. This evidence was sufficient to substantiate the charge of resisting arrest with violence. The conviction is also affirmable for another reason, which is simply that appellant's claim that Officer Darnell was not engaged in the performance of any legal duty at the time of appellant's forcible resistance (which he predicated on the officer's lack of authority to arrest a third party, Granville) is not a defense to the charge. State v. Barnard, 405 So.2d 210 (Fla. 5th DCA 1983); State v. Johnson, 382 So.2d 866 (Fla. 2d DCA 1980); Meeks v. State, 369 So.2d 109 (Fla. 1st DCA 1979); Lowrey v. State, 356 So.2d 1325 (Fla. 4th DCA 1978). Accordingly, the judgments appealed from below are
AFFIRMED.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] Appellant cites federal cases as supportive of his claim that the summoning process here was biased and resulted in a systematic exclusion of an identifiable segment of appellant's community. Henson v. Wyrick, 634 F.2d 1080 (8th Cir.1980), Anderson v. Frey, 715 F.2d 1304 (8th Cir.1983). These cases do not aid appellant. In both cases, jurors were selected for impaneling on a jury venire by a state sheriff or his deputies or his associates, all of whom had personally conducted the investigation or investigations resulting in the defendants in those cases being arrested and prosecuted, respectively. Here, the summoning or selection process of jurors to fully impanel the jury venire for appellant's case was undertaken by people without "institutional and professional interests in successful prosecution [of the defendant's cause]." Anderson v. Frey, supra at 1309. Appellant makes no showing here that any of the employees of the Suwannee County Clerk of Court's Office, Sheriff Leonard, or his deputies involved in summoning jurors for appellant's cause were involved in the prosecution of his cause.